UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SCOTT MICHAEL CATLIN,

                      Plaintiff,

v.                                     1:19-CV-0622
                                     (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

APPEARANCES:                          OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC    BRANDI SMITH, ESQ.
  Counsel for Plaintiff                        KENNETH HILLER, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.          JAMES BURGESS, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II  RICHARD PRUETT, ESQ.
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

       The parties consented, in accordance with a Standing Order, to proceed before the undersigned.  (Dkt. No. 19.)  The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).  The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

## I.      RELEVANT BACKGROUND

**A.      Factual Background**

Plaintiff was born in 1969.  (T. 84.)  He completed the 12th grade.  (T. 199.)

Generally, Plaintiff's alleged disability consists anxiety, depression, and substance

abuse.  (T. 86.)  His alleged disability onset date is October 18, 2013.  (T. 85.)  His date

last insured is December 31, 2018.  (*Id*.)  His past relevant work consists of cashier and

laborer.  (T. 199.)

**B.      Procedural History**

On November 24, 2015, Plaintiff applied for a period of Disability Insurance

Benefits ("SSD") under Title II and Supplemental Security Income ("SSI") under Title

XVI of the Social Security Act.  (T. 85.)  Plaintiff's applications were initially denied, after

which he timely requested a hearing before an Administrative Law Judge ("the ALJ").

On January 12, 2018, Plaintiff appeared before the ALJ, Lynette Gohr.  (T. 29-83.)  On

March 13, 2018, ALJ Gohr issued a written decision finding Plaintiff not disabled under

the Social Security Act.  (T. 9-28.)  On March 18, 2019, the AC denied Plaintiff's request

for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-

6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

**C.      The ALJ's Decision**

Generally, in her decision, the ALJ made the following five findings of fact and

conclusions of law.  (T. 14-24.)  First, the ALJ found Plaintiff met the insured status

requirements through December 31, 2018 and Plaintiff had not engaged in substantial

gainful activity since October 18, 2013.  (T. 14.)  Second, the ALJ found Plaintiff had the

severe impairments of: substance use disorder involving multiple substances;

depression; and anxiety.  (T. 15.)  Third, the ALJ found Plaintiff did not have an

impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (*Id*.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels; but was able to work in a low stress work environment, which the ALJ defined as performing no more than simple instructions and tasks with no supervisory duties, independent decision-making, strict production quotas, and minimal changes in work routine and processes.  (T. 17.)  The ALJ further determined Plaintiff could have occasional interaction with supervisors, coworkers, and the public.  (*Id*.)  Fifth, the ALJ determined Plaintiff was unable to perform past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 22-23.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes two separate arguments in support of his motion for judgment on the pleadings.  First, the ALJ failed to properly evaluate the treating opinions in the record.  (Dkt. No. 13 at 10-13.)  Second, and lastly, Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence.  (*Id*. at 13-18.)  Plaintiff also filed a reply in which he reiterated his original arguments.  (Dkt. No. 18.)

### B.    Defendant's Arguments

In response, Defendant makes three arguments.  First, Defendant argues the ALJ reasonably found Plaintiff's reported symptoms were inconsistent with other evidence.  (Dkt. No. 17 at 9-13.)  Second, Defendant argues the ALJ reasonably

weighed the medical opinions.  (*Id*. at 14-17.)  Third and lastly, Defendant argues the ALJ's RFC assessment was supported by substantial evidence.  (*Id*. at 17-21.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

**IV.    ANALYSIS**

### A.      Treating Source Opinion Evidence

Plaintiff argues the ALJ failed to properly assess the opinion evidence provided by treating sources, Jennifer Yerke-McNamara, M.D. and Sanjay Gupta, M.D.  (Dkt. No. 13 at 10-13.)  Plaintiff argues the ALJ failed to articulate "anything more than conclusory rationale or cite specific treatment notes" in evaluating the opinions and therefore failed to provide "good reasons" in discounting the opinions.  (*Id*. at 12-13.)  Defendant argues the ALJ properly considered the opinions provided by Drs. Yerke-McNamara and Gupta and the ALJ provided evidence in the record to support her determination.  (Dkt. No. 17 at 14-17.)  For the reasons outlined below the ALJ's reasoning for affording less than controlling weight to the treating sources' opinions can be gleaned from the record and therefore the ALJ did not err in assessing opinion evidence.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)[1].  When assigning less than "controlling weight" to a treating physician's opinion, the ALJ must "explicitly consider" the four factors announced in *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008).  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (internal quotation marks omitted).  Those factors, referred to as "the *Burgess* factors," are "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."

---

[1]      Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs").  Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

*Estrella,* 925 F.3d at 95-96 (citation omitted); 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2).  A reviewing court should remand for failure to consider explicitly the *Burgess* factors unless a searching review of the record shows that the ALJ has provided "good reasons" for its weight assessment.  *Id*. at 96; *see Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) ("While the ALJ here did not always explicitly consider the *Burgess* factors when assigning the treating physician' opinions less than controlling weight, we nonetheless conclude that the ALJ provided sufficient "good reasons" for the weight assigned.").  Here, the ALJ properly evaluated the treating opinions and provided more than conclusory reasons for her determination.

On May 13, 2016, Plaintiff's primary care provider, Dr. Yerke-McNamara, completed a "Medical Examination for ABAWD Determination."  (T. 408-409.)[2]  Dr. Yerke-McNamara listed Plaintiff's diagnosis as depression, anxiety, and addiction.  (T. 408.)  When asked to indicate Plaintiff's physical functional limitations, the doctor selected "moderately limited" in the areas of: walking; lifting, carrying; pushing, pulling; bending; seeing, hearing, speaking; using hands; and stairs or other climbing.  (*Id*.)  She selected "no evidence of limitations" in the areas of standing and sitting.  (*Id*.)  When asked to indicate Plaintiff's mental functional limitations, the doctor selected "very limited" in the areas of: maintaining attention/concentration; interacting appropriately with others; and appearing able to function in a work setting at a consistent pace.  (*Id*.)  She also wrote "OCD and dyslexia" under the heading "other."  (*Id*.)  She selected "moderately limited" in the areas of: understanding and remembering instructions; carrying out instructions; making simple decisions; and maintaining socially appropriate

---

[2] ABAWD stands for able bodied adult without dependents.  SNAP Work Requirements, https://www.fns.usda.gov/snap/work-requirements.

behavior without exhibiting behavior extremes.  (*Id.*)  She selected "no evidence of

limitation" in the area of maintains basic hygiene and grooming.  (*Id.*)

On February 21, 2017.  (T. 407-408.)  She provided the same level

Dr. Yerke-McNamara completed another "Medical Examination for ABAWD

Determination" form on February 21, 2017.  (T. 407-408.)  She provided the same level

of physical and mental functional limitations as in May 2016.  (Compare T. 406-407 with

T. 408-409.)

On January 8, 2018, Dr. Gupta completed a mental medical source statement.

(T. 771-776.)  Dr. Gupta opined Plaintiff was unable to meet competitive standards

(defined as noticeable difficulty, e.g. distracted from job activity, from 21 to 40 percent of

the workday in work week) in his ability to: maintain regular attendance and be punctual

within customary, usually strict tolerances; complete normal workday and workweek

without interruptions from psychologically based symptoms; perform at a reasonable

pace without an unreasonable number and length of the periods; deal with normal work

stress.  (T. 773.)  He also opined Plaintiff was seriously limited (defined as noticeable

difficulty, e.g. distracted from job activity, from 11 to 20 percent of the workday in work

week) in his ability to: understand and remember very short and simple instructions;

maintain attention for two hour segments; sustain an ordinary routine without special

supervision; work in coordination and in proximity to others without being unduly

distracted; make simple work-related decisions; accept and respond appropriately to

criticism from supervisors; and respond appropriately to changes in a routine work

setting.  (*Id.*)  Dr. Gupta explained, "[w]hile depression symptoms impact ability for self

care and social interaction, client is able to interact appropriately with others."  (T. 774.)

Dr. Gupta indicated Plaintiff found the following demands of work to be stressful: speed; precision; complexity; deadlines; working within a schedule; making decisions; exercising independent judgment; completing tasks; working with other people; dealing with the public; dealing with supervisors; being criticized by supervisors; simply knowing that work is supervised; getting to work regularly; remaining at work for a full day; fear of failure at work; monotony of routine; little latitude for decision-making; lack of collaboration on the job; underutilization of skills; and lack of meaningfulness of work. (T. 775.)  He opined Plaintiff's impairments or treatment would cause him to be absent from work more than 4 days per month.  (*Id*.)  He indicated alcohol or substance abuse contributed to Plaintiff's impairments.  (T. 776.)  He stated Plaintiff would likely need skills training for an eight hour a day, five days a week job if he sustained from alcohol or substance abuse.  (T. 776.)

The ALJ afforded Dr. Yerke-McNamara's opinions "little weight."  (T. 21.)  In affording the opinions little weight, the ALJ reasoned the physical limitations provided were inconsistent with Plaintiff's own assertions he had no physical impairments or limitations.  (*Id*.)  To be sure, as stated by Plaintiff, the ALJ did not cite a specific record in support of his conclusions, instead writing "see above."  (Dkt. No.  13 at 12.)  Although the ALJ did not cite a specific notation in the record in her discussion of the doctor's opinion, this is not a case where the ALJ's reasoning cannot be gleaned from the record.  *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983)) ("An ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision."); *see Estrella,* 925

F.3d at 95-96 (remand not necessary where a "searching review of the record shows that the ALJ has provided 'good reasons' for its weight assessment").

In her written decision the ALJ cited specific evidence in the record which supported her conclusion that Dr. Yerke- McNamara's physical limitations were inconsistent with Plaintiff's statements regarding lack of physical impairments and limitations. *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-113 (2d Cir. 2010) (ALJ may reject a treating physician's analysis as far as that analysis conflicts with a claimant's own testimony about how the claimant's impairments affect the claimant's functional capacity).

At step two of the sequential process the ALJ determined Plaintiff's physical impairments were non-severe, a determination Plaintiff does not challenge.  (T. 15.) The ALJ noted Plaintiff initially alleged disability due to mental impairments and substance abuse, and later alleged he was also disabled due to arthritis.  (*Id*.)  The ALJ noted Plaintiff was evaluated and treated for arthritis; however objective medical imagining showed mild degenerative joint disease of the right hand.  (*Id*.)  Plaintiff testified he was not taking medications or receiving treatment for physical impairments. (*Id*.)  Plaintiff testified his impairments were mental and he had no chronic physical impairments.  (*Id*.)  Indeed, Plaintiff denied any physical conditions in October 2015 and reported his "problems are mental."  (T. 332.)  The ALJ's reasoning in affording Dr. Yerke-McNamara's opinion regarding physical limitations less than controlling weight can be easily gleaned from the ALJ's decision.  The ALJ properly determined at step two Plaintiff's physical impairments were non-severe and supported her conclusion with

specific evidence in the record such as objective medical evidence and Plaintiff's testimony.

In addition, Dr. Yerke-McNamara's opinion was inconsistent with consultative examiner Hongbiao Liu, M.D.'s examination and opinion.  Dr. Liu examined Plaintiff on March 2, 2016.  (T. 304.)  Plaintiff reported to Dr. Liu he could lift thirty pounds, walk three miles, change position every three hours while sitting or standing, cold weather made his pain worse, he did not experience numbness or tingling in his hands, and he received no treatment for his arthritis.  (*Id*.)  On exam, Plaintiff had full range of motion in his spine and extremities.  (T. 305-306.)  Plaintiff had intact dexterity in hands and fingers and 5/5 grip strength bilaterally.  (T. 306.)  Dr. Liu reviewed x-rays of Plaintiff's hand which indicated degenerative joint disease.  (*Id*.)  An x-ray of Plaintiff's right knee was negative.  (*Id*.)  Dr. Liu opined Plaintiff had "no limitations for physical activities." (*Id*.)

The ALJ afforded Dr. Liu's opinion "significant weight."  (T. 22.)  The ALJ concluded the opinion was based on the doctor's examination and knowledge of Social Security disability; consistent with Plaintiff's reports he had no physical limitations; and consistent with treatment notes showing no clinical or significant diagnostic findings. (*Id*.)  The ALJ properly weighed Dr. Liu's opinion and substantial evidence supported the ALJ's weight determination.  *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (the opinion of a treating physician is not binding if it is contradicted by substantial evidence, and a consulting physician report may constitute such evidence).

The ALJ also properly afforded weight to Dr. Yerke-McNamara's and Dr. Gupta's mental limitations.  The ALJ rejected Dr. Yerke-McNamara's opinion because "treatment

notes [did] not show any persistent complaints of difficulty concentrating and interacting with others." (T. 21.) Indeed, Plaintiff reported no difficulty concentrating or interacting with others. At an October 2015 visit with his therapist, he reported no difficulty concentrating. (T. 311.) In his January 2016 function report, he admitted that he had no "problems getting along with family, friends, neighbors, or others," he did not socialize more because he could not drive. (T. 210.) He stated he had no problems paying attention, finishing what he started, following instructions, or getting along with people in authority. (T. 211-212.)

The ALJ properly concluded Dr. Yerke-McNamara's mental limitations were also inconsistent with "generally unremarkable" mental status examinations. (T. 21); *see* 20 C.F.R. § 404.1527(c)(4) (stating an ALJ must consider whether an opinion is consistent with the record as a whole). Indeed, while there were a few examinations where providers noted some abnormal findings, many mental status examinations were entirely normal. (T. 271, 275, 278, 296, 298, 455, 459, 501, 618, 621, 624, 627, 630, 633, 643-644, 646, 649, 652, 655, 658, 661, 664, 667, 670, 673, 676, 679, 682, 684, 686, 690, 693.) Therefore, the ALJ properly assessed Dr. Yerke-McNamara's opined mental limitations and her determination was supported by substantial evidence in the record.

The ALJ applied the same reasoning to Dr. Gupta's opinion. (T. 21.) The ALJ properly concluded the mental limitations provided by Dr. Gupta were inconsistent with the generally unremarkable findings on mental status examinations, as outlined above. Dr. Gupta's limitations, like Dr. Yerke-McNamara's, were inconsistent with the opinion of Dr. Liu.

Further, as stated by Defendant, although Dr. Gupta only examined Plaintiff on one occasion, the ALJ considered Dr. Gupta to be a treating source.  (Dkt. No. 17 at 16.)  Dr. Gupta saw Plaintiff for the first and only time in October 2017; however, in the medical source statement the doctor claimed Plaintiff was seen weekly since July 2016. (Compare T. 771 with T. 500.)   Treating sources who see a patient only once or twice do not have a chance to develop an ongoing relationship with the patient and are generally not considered treating physicians.  *Petrie v. Astrue,* 412 F. App'x 401, 405 (2d Cir.2011); *see Schisler v. Bowen,* 851 F.2d 43, 46 (2d Cir.1988) (defining a "treating physician" as a physician "who has or had an ongoing treatment and physician-patient relationship with the individual").  Similarly, although Dr. Gupta first examined Plaintiff in October 2017, and the only records he reviewed were nurse practitioner Ms. Brooks-Devlin's March 2017 findings (*see* T. 500), he wrote Plaintiff's symptoms remained the same since July 2016 (T. 771.)  Therefore, the ALJ properly assessed the mental limitations imposed by Dr. Gupta and her determination was supported by substantial evidence in the record.

In addition, the ALJ properly evaluated the opinion of consultative examiner Gina Zali, Psy.D.  (T. 22.)  Of note, Plaintiff does not argue the ALJ erred in her assessment of Dr. Zali's opinion.  (Dkt. No. 13.)  Dr. Zali examined Plaintiff and opined Plaintiff had no limitations in his ability to follow and understand simple directions and instructions, perform simple tasks independently, or maintain attention and concentration.  (T. 302.) She further opined Plaintiff had mild limitations in his ability to: maintain a regular schedule and perform complex tasks.  (*Id*.)  She opined Plaintiff had moderate limitations in his ability to: learn new tasks and relate adequately with others.  (*Id*.)  She

opined Plaintiff had marked limitations in his ability to make appropriate decisions. (*Id.*) She stated difficulties were "caused by psychiatric and substance abuse problems." (*Id.*) The ALJ afforded Dr. Zali's opinion partial weight. (T. 22.) The ALJ concluded the areas of limitations were afforded significant weight and the magnitude of the limitations were afforded little weight because Plaintiff had been abstinent from heroin and/or opiates for a short period at the time of the doctor's examination and opinion, Plaintiff was able to perform activities of daily living, manage his medications, and attend appointments. (*Id.*)

The ALJ also considered the opinion of non-examining State agency medical examiner, S. Juriga, Ph.D. (T. 22.) Dr. Juriga reviewed the record in March 2016 and opined Plaintiff had mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties maintaining concentration, persistence, or pace; and no episodes of decompensations. (T. 90-94.)

Dr. Juriga opined Plaintiff was "not significantly limited" in his ability to: remember locations and work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; carry out detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; and complete a normal workday and workweek without interruptions from psychologically bases symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ask simple question or request assistance; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take

appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others.  (T. 92-94.)

Dr. Juriga also opined Plaintiff was "moderately limited" in his ability to: understand and remember detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately wot changes in the work setting.  (T. 92-94.)

The ALJ afforded Dr. Juriga's opinion partial weight.  (T. 22.)  The ALJ concluded the opinion was not based on an examination; however, the opinion was consistent with the record as a whole such as clinical findings and some reported limitations in activities of daily living.  (*Id*.)  Plaintiff does not argue the ALJ erred in her evaluation of Dr. Juriga's opinion.  (Dkt. No. 13.)

Overall, the ALJ provided more than a conclusory rationale in assessing the opinions.  Here the ALJ properly assessed the medical opinion evidence in the record and her determinations were supported by substantial evidence.  Although the ALJ did not cite to the record in her analysis of the medical opinion evidence, the ALJ's reasoning can be easily gleaned from the record.  Because "a searching review of the record shows that the ALJ has provided 'good reasons' for its weight assessment" remand is not necessary.  *Guerra*, 778 F. App'x at 77.

**B.     Mental RFC Determination**

Plaintiff argues the ALJ's mental RFC determination was the product of legal error because the ALJ "rejected" all of the medical opinion evidence in the record and therefore relied on her own lay interpretation of the medical evidence. (Dkt. No. 13 at 13-18.)[3]  Plaintiff makes the related argument the ALJ created an evidentiary gap in the record when she rejected all of the medical opinions. (*Id*. at 15.)

The RFC is an assessment of "the most [Plaintiff] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1), 416.945(a)(1).  The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources. *Id*. §§ 404.1527(d), 404.1545(a)(3), 404.1546(c), 416.927(d), 416.945(a)(3), 416.946(c).  Although the ALJ has the responsibility to determine the RFC based on all the evidence in the record, the burden is on Plaintiff to demonstrate functional limitations that preclude any substantial gainful activity. *Id*. §§ 404.1512(c), 404.1527(e)(2), 404.1545(a), 404.1546(c), 416.912(c), 416.927(e)(2), 416.945(a), 416.946(c).

First, contrary to Plaintiff's assertion, the ALJ did not "reject" all of the medical opinions in the record.  As outlined herein, the ALJ properly afforded "little weight" to the mental limitations provided by Dr. Yerke-McNamara and "little weight" to Dr. Gupta's opinion. (T. 22.)  Further, the ALJ afforded weight to Dr. Zali's opinion and Dr. Juriga's opinion. (*Id*.)  Therefore, the ALJ did not "reject" all of the medical opinions in the record.

---

[3]   Plaintiff does not argue the ALJ erred in formulating her physical RFC determination. (Dkt. No. 13 at 13-18.)

Second, the ALJ is obligated to formulate Plaintiff's RFC based on the record as a whole, not just upon the medical opinions alone. *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018).  The ALJ did just that in this case.  After considering the record as a whole, the ALJ appropriately accounted for the mental limitations she found supported by the overall record by limiting Plaintiff to low stress work defined as simple instructions and tasks with no supervisory duties, independent decision-making, strict production quotas, minimal changes in work routine and processes, and only occasional interaction with supervisors, coworkers, and the public. (T. 17.)

The RFC finding is not defective merely because it "does not perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision." *Trepanier*, 752 F. App'x at 79; *see also Monroe v. Com'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (rejecting argument that remand was required because ALJ discounted the only medical opinion such that "there was no competent medical opinion that supported the ALJ's RFC determination.").  Although the ALJ did not adopt any opinion in its entirety, she adequately explained her reasons for not doing so.  Accordingly, the Court finds that the ALJ did not substitute her own lay judgment for a competent medical opinion.  *Wynn*, 342 F. Supp. 3d at 349 (W.D.N.Y. 2018).  Therefore, Plaintiff's argument fails.

Third, Plaintiff argues Drs. Yerke-McNamara, Gupta, and Zali all opined Plaintiff had more severe limitations dealing with stress and making decisions than found by the ALJ and it is "unclear how an ALJ's lay opinion would be more accurate [than] the opinions of three medical professionals."  (Dkt. No. 13 at 17.)  Relying on *Giddings v.*

17

*Astrue*, 333 F. App'x. 649, 652 (2d Cir. 2009), Plaintiff argues that the ALJ was required

to provide an "overwhelmingly compelling" critique to justify her finding.  (Dkt. No. 13 at

18.)  Plaintiff's argument is misplaced.

     *Giddings* involved comparing the opinions of a nonexamining source with those

of a treating source.  *See Giddings*, 333 F. App'x. at 652 ("when a medical opinion

stands uncontradicted, '[a] circumstantial critique by non-physicians, however thorough

or responsible, must be overwhelmingly compelling in order to overcome' it."); *see*

*Robert L. v. Saul*, No. 8:19-CV-41, 2020 WL 1689886, at *9 (N.D.N.Y. Apr. 7, 2020)

(holding in *Giddings* involved comparing opinions of nonexamining source with treating

source).  Here, the ALJ never made such a comparison.  In addition, the Court has also

held an ALJ is not required to identify evidence explicitly rebutting the opinions of a

treating physician before discounting or rejecting them.  *Smith v. Berryhill*, 740 F. App'x

721, 725-726 (2d Cir. 2018).

     The ALJ cited several medical opinions and other objective evidence in the

record to support her RFC determination.  As stated herein, the ALJ did not reject the

medical opinions of Plaintiff's treating sources, but properly afforded them less than

controlling weight.  The ALJ also relied on the examination and opinion of the

consultative examiner Dr. Zali.  Lastly, Plaintiff appears to ignore the ALJ's discussion of

Dr. Juriga's opinion and the objection mental status examinations, which the ALJ relied

on in making her RFC determination.  Overall, the ALJ did not reject all of the medical

opinion evidence and impermissibly rely on her own lay interpretation of raw medical

data in formulating her RFC.  The ALJ relied on the record as a whole in formulating

Plaintiff's mental RFC including medical opinions in the record, objective mental health

observations, and other evidence.  Therefore, the ALJ properly formatted the RFC

determination and the RFC was supported by substantial evidence in the record.

**ACCORDINGLY**, it is

    **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is

**<u>DENIED</u>**; and it is further

    **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17)

is **<u>GRANTED</u>**; and it is further

    **ORDERED** that Defendant's unfavorable determination is **<u>AFFIRMED</u>**; and it is

further

    **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated:      September 14, 2020

                        William B. Mitchell Carter
                        U.S. Magistrate Judge